IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

THOMAS RAY BAKER                                                                    PLAINTIFF

V.                                   NO. 15-5211

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration                           DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Thomas Ray Baker, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.      Procedural Background:**

Plaintiff filed his applications for DIB and SSI on November 7, 2012, alleging disability since April 26, 2012, due to lower back pain, left side hernia, chronic pain, colitis/IBS, chronic fatigue, asthma, and high blood pressure. (Doc. 12, pp. 112-113, 215-227, 257, 263). An administrative hearing was held on December 2, 2013, at which Plaintiff appeared with counsel and testified. (Doc. 12, pp. 44-111).

By written decision dated May 2, 2014, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe –

1

degenerative disc disease of the lumbar spine, obesity, hypertension, asthma with recurrent bronchitis, and a history of bilateral inguinal hernia repairs. (Doc. 12, p. 34). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Doc. 12, p. 36). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). He can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl, but he must never climb ladders, ropes, and scaffolds. Additionally, he must avoid concentrated exposure to temperature extremes, humidity, fumes, odors, dusts, gases, poor ventilation and hazards, including driving as a part of work.

(Doc. 12, p. 36). With the help of a vocational expert (VE), the ALJ determined Plaintiff was capable of performing past relevant work as a cashier/checker, as generally performed, and a retails salesperson, as generally performed. (Doc. 12, p. 39).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied the request on July 22, 2015, (Doc. 12, pp. 5-8). Subsequently Plaintiff filed this action. (Doc. 1). Both parties have filed briefs and this case is before the undersigned for report and recommendation. (Docs. 10, 11).

**II.   Evidence Presented:**

Plaintiff was born in 1981. In 2010, prior to the relevant time period (April 26, 2012 through May 2, 2014), Plaintiff had a right hernia repair performed by Dr. Jeffrey Bell. (Doc. 12, pp. 311, 348). Also in 2010, Plaintiff saw Kirk Johnson, DC, a chiropractor, who reported that Plaintiff was under his care for recurring intervertebral disc syndrome, which caused "acute, debilitating low back pain." (Doc. 12, p. 450). On December 2, 2011, Plaintiff underwent a Psychological Screening Evaluation – Rehabilitation Initial Diagnosis and

2

Assessment for Clients, by Letitia C. Hitz, Ph.D. (Doc. 12, p. 559). Dr. Hitz diagnosed Plaintiff with mathematics disorder and disorder of written expression. (Doc. 12, p. 561). In 2011 and 2012, Dr. Charles R. Belt diagnosed Plaintiff with various maladies, including: insomnia; back pain; seborrheic dermatitis; sebaceous cyst; folliculitis; tonsillitis; headache; gastroenteritis; and hypertension. (Doc. 12, pp. 350-355).

On April 26, 2012, while working at the University of Arkansas, Plaintiff was moving equipment and felt a pop in his right groin. (Doc. 12, p. 346). Plaintiff saw Dr. David Beck on April 27, 2012, and was diagnosed with muscle strain-groin and folliculitis. (Doc. 12, p. 348). Plaintiff again saw Dr. Beck on April 30, 2012, for an initial assessment for Worker's Compensation, and Dr. Beck reported that he was concerned about possible disruption of Plaintiff's previous hernia repair, and concluded that Plaintiff had, at the very least, muscle strain of the groin. (Doc. 12, p. 347). He diagnosed Plaintiff with muscle strain of the groin, folliculitis, and right lower quadrant abdominal pain, and Dr. Beck instructed Plaintiff to refrain from lifting anything weighing more than 10 pounds. (Doc. 12, p. 347). On May 7, 2012, Dr. Beck reported that Plaintiff needed an extension to refrain off work, because he had an appointment with Dr. Jeffrey Bell the next day to discuss possible surgery. (Doc. 12, p. 345).

On May 8, 2012, Plaintiff saw Dr. Bell, and denied arthralgias, back pain, bone pain, muscle pain, myalgias, joint pain, joint swelling, muscle cramps or muscle weakness. (Doc. 12, p. 324). That same day, Dr. Bell wrote a letter to Dr. Belt, stating that on physical exam, there was some tenderness to palpation, but no clear inguinal hernia, and that he recommended a CT scan of the abdomen and pelvis. (Doc. 12, p. 359). A CT of Plaintiff's abdomen and pelvis was performed on May 11, 2012, with the following impression:

1. No acute inflammatory process in the abdomen or pelvis
2. Normal appendix
3. Prior right inguinal hernia repair without evidence of recurrence
4. Stable small fat-containing left inguinal hernia
5. Bilateral L5 Spondylosis without significant spondylolisthesis

(Doc. 12, p. 322).

On May 31, 2012, Plaintiff saw Dr. Belt for a follow-up on his blood pressure. (Doc. 12, p. 344). Plaintiff reported that his blood pressure was not staying down on Amiodipine, and that he had been out of it for a few weeks. (Doc. 12, p. 344). At that time, Plaintiff reported feeling very stressed and depressed, and also noted his scalp was itching a lot and he was having pain in his lower abdomen. (Doc. 12, p. 344). Plaintiff reported that he had been found to have a left inguinal hernia, which was aggravated by lifting on the job, and that worker's compensation was refusing to pay for further care. Plaintiff was diagnosed with hypertension, inguinal hernia, and tinea capitis. (Doc. 12, p. 344). Dr. Belt changed Plaintiff's blood pressure medicine to Lisinopril, and wrote a note for Plaintiff to be off work for another month, while he was appealing the Worker's Compensation denial.(Doc. 12, p. 344).

On June 22, 2012, Plaintiff reported to Dr. Belt that he was still having some lower abdominal pain with activity, and was diagnosed with an inguinal hernia and hypertension. (Doc. 12, p. 342). On July 31, 2012, Plaintiff followed up with Dr. Belt regarding his hernia, and reported he was still having issues, and that his medication was causing nausea and upset stomach. (Doc. 12, p. 338). Dr. Belt diagnosed Plaintiff with a hernia.

On August 20, 2012, Dr. Johnson, Plaintiff's chiropractor, reported that fortunately, "Plaintiff has improved somewhat since last visit." (Doc. 12, p. 369). He further reported that Plaintiff's range of motion remained restricted and uncomfortable, and related neurologic

4

functioning appeared to be the same. (Doc. 12, p. 369). On August 30, 2012, Plaintiff saw Dr. Belt for follow up with his upset stomach and acid reflux, and Dr. Belt diagnosed Plaintiff with an inguinal hernia, gastroesophageal reflux disease, and "may not return to work" because he was "getting surgery." (Doc. 12, p. 337). On October 9, 2012, Plaintiff again saw Dr. Belt for a follow up and told Dr. Belt that he had a hernia on the left side and was having pain on the right side. Dr. Belt assessed Plaintiff with an inguinal hernia, and recommended surgery. (Doc. 12, p. 332). On that same date, Dr. Johnson reported that Plaintiff was in acute pain, which was an ongoing chronic problem. (Doc. 12, p. 369). On October 10, 2012, Dr. Johnson completed a "Unum Disability Claim Form," wherein he reported that Plaintiff's primary diagnosis was lower lumbar intervertebral disc syndrome with right radiculitis and paravertebral muscle spasms, and the secondary diagnosis was inguinal hernia. (Doc. 12, p. 326). Dr. Johnson concluded that Plaintiff should do no repetitive bending at the waist and no lifting/handling over 10 pounds "indefinitely between 10/9/12 and 11/20/12." (Doc. 12, p. 327). His treatment plan was reported as being chiropractic manipulative therapy with physiotherapy "on an acute basis at 3 times per week for an estimated 6 weeks." (Doc. 12, p. 327).

On October 31, 2012, Dr. Belt reported that Plaintiff had not taken his blood pressure medicine that day but was "generally OK" and needed a referral to a surgeon for his groin pain. (Doc. 12, p. 330). Also On October 31, 2012, Dr. Johnson reported that Plaintiff was maintaining significant improvements, and that his range of motion was "actually approaching normal," and that there were no additional neurologic findings of concern. He recommended continuing with conservative corrective care. (Doc. 12, p. 370).

On November 13, 2012, Plaintiff underwent a left inguinal hernia repair at Washington Regional Medical Center (WRMC), performed by Dr. Ronald Mullis. (Doc. 12, p. 387).

On February 15, 2013, non-examining consultant, Dr. Jim Takach completed a Physical RFC Assessment, finding that Plaintiff would be able to perform light work with certain postural limitations. (Doc. 12, pp. 136-137). On July 3, 2013, Plaintiff went to the Free Health Care Clinic for refills of his medication. (Doc. 12, p. 569). On August 12, 2013, the clinic diagnosed Plaintiff with GERD and headaches and lower back pain. (Doc. 12, p. 567). On November 13, 2013, Plaintiff again presented himself to the clinic, and was diagnosed with sinusitis and seborrheic dermatitis. (Doc. 12, p. 565).

### III.   Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents

the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §423(d)(1)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§423(d)(3).  A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience.  See 20 C.F.R. §416.920   Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his RFC.  See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §416.920, abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. §416.920.

**IV.    Discussion:**

Plaintiff argues that the ALJ did not base his determination of the Plaintiff's RFC on all of the relevant evidence in the record. (Doc. 10, p. 3). More specifically, Plaintiff argues that the ALJ erred by giving no weight to the opinion of Dr. Johnson, Plaintiff's chiropractor.

**A.    Credibility:**

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id.  As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

In this case, the ALJ found, after considering the evidence, that although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, his statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely credible. (Doc. 12, p. 37). The ALJ addressed Plaintiff's daily activities, noting that he remained capable of caring for pets, maintaining his personal grooming, cooking, mowing the lawn, driving, shopping, and attending doctor's appointments. (Doc. 12, p. 35). He also addressed all of the relevant medical records,

8

Plaintiff's prior work history, and subjective complaints, in accordance with Polaski. (Doc. 12, pp. 37-38).

Based upon the foregoing, the Court finds there is substantial evidence to support the ALJ's credibility findings.

### B.   RFC and Weight Given to Physicians:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Gilliam's v. Barnhart, 3 93 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id. "The ALJ is permitted to base its RFC determination on 'a non-examining physician's opinion *and* other medical evidence in the record.'" Barrows v. Colvin, No. C 13-4087-MWB, 2015 WL 1510159 at *11 (N.D. Iowa Mar. 31, 2015)(quoting from Willms v. Colvin, Civil No. 12-2871, 2013 WL 6230346 (D. Minn. Dec. 2, 2013).

With respect to the weight given to the opinions of treating physicians, "[a] claimant's treating physician's opinion will generally be given controlling weight, but it must

9

be supported by medically acceptable clinical and diagnostic techniques, and must be consistent with other substantial evidence in the record." Andrews v. Colvin, No. 14-3012, 2015 WL 4032122 at *3 (8th Cir. July 2, 2015)(citing Cline v. Colvin, 771 F.3d 1098, 1102 (8th Cir. 2014). "A treating physician's opinion may be discounted or entirely disregarded 'where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" Id. "In either case-whether granting a treating physician's opinion substantial or little weight-the Commissioner or the ALJ must give good reasons for the weight apportioned." Id.

Plaintiff argues that the ALJ erred by giving no weight to the opinion of Dr. Johnson, Plaintiff's chiropractor. As noted earlier, in a form entitled "Unum Disability Claim Form," Dr. Johnson opined that Plaintiff should do no repetitive bending at the waist and no lifting/handling over 10 pounds "indefinitely between 10/9/12 and 11/20/12." (Doc. 12, p. 327).

In his decision, the ALJ gave great weight to the State Agency Reviewer's assessment, wherein Dr. Takach concluded that Plaintiff remained capable of performing a significant range of light work, because the ALJ found this view to be consistent with Plaintiff's treatment records and objective findings. (Doc. 12, p. 38). The ALJ gave no weight to Dr. Johnson's opinion, noting that while Dr. Johnson reported that Plaintiff was unable to perform certain activities indefinitely, he only recommended three weeks of treatment for the impairments. (Doc. 12, p. 38).

The Court first notes that Dr. Johnson, who is a chiropractor, is not an acceptable medical source. Instead, he is considered an "other source," and his opinion is not entitled to

the same weight given to "acceptable medical sources." See 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1). The ALJ did consider Dr. Johnson's report, and gave a good reason for rejecting it. In addition, Dr. Johnson's form contained inconsistencies, such as the fact that he limited Plaintiff to no repetitive bending at the waist and no lifting/handling over 10 pounds "indefinitely," but then qualified the limitation to "between 10/9/12 and 11/20/12." (Doc. 12, p. 327). He further reported that the treatment plan was chiropractic therapy with physiotherapy on an acute basis at 3 times per week "for an estimated 6 weeks." (Doc. 12, p. 327). In addition, three weeks later, on October 31, 2012, Dr. Johnson reported that Plaintiff was maintaining significant improvement, his range of motion was actually approaching normal, and that they would continue with conservative corrective care. (Doc. 12, p. 370).

Based upon the foregoing, the Court believes there is substantial evidence to support the ALJ's RFC determination and the weight, or lack thereof, he gave to Dr. Johnson's opinion.

### C.    Hypothetical Question to VE:

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical questions the ALJ posed to the VE fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005).  Accordingly, the Court finds that the VE's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff would be able to perform his past relevant work as a cashier/checker and retails salesperson, as they are generally performed. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

## V.     Conclusion:

Accordingly, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

IT IS SO ORDERED this 3rd day of October, 2016.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE